UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


VARIOUS BELO PLAINTIFFS          *          CIVIL ACTION
                                 *
versus                           *
                                 *          NOS. ***
BP EXPLORATION & PRODUCTION, INC. *
  et al.                         *
                                 *          SECTION "J" (2)
                                 *
*** Related To:  12-CV-968 BELO  *
             in MDL 2179         *          February 27, 2019
* * * * * * * * * * * * * * * * * *


TRANSCRIPT OF STATUS CONFERENCE BEFORE
THE HONORABLE JOSEPH C. WILKINSON JR.
UNITED STATES MAGISTRATE JUDGE


<u>Appearances</u>:


For Plaintiffs:              The Nations Law Firm
                             BY:  PATRICK KIRBY, ESQ.
                             3131 Briarpark Drive, Suite 208
                             Houston, Texas 77042


For Defendants:              Liskow & Lewis, APLC
                             BY:  R. KEITH JARRETT, ESQ.
                             701 Poydras Street, Suite 5000
                             New Orleans, Louisiana 70130


For Defendants:              Williams & Connolly, LLP
                             BY:  KEVIN M. HODGES, ESQ.
                             725 12th Street N.W.
                             Washington, D.C 20005

Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                             500 Poydras Street, Room B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7778

Proceedings recorded by mechanical stenography using
computer-aided transcription software.

<u>**PROCEEDINGS**</u>

**(February 27, 2019)**

THE COURT:  Good morning.  Have a seat, please.

This is 148 motions to compel in various BELO cases, various plaintiffs against BP Exploration & Production and others.  We set this for oral argument this morning.  It's not really going to be oral argument.  It's really going to be a status conference.  I want to try to figure out a way to better address this issue than by having this happen.

I've got a pressing personal matter that I must attend to at lunchtime today that only the New Orleans people would understand, and that is I must deliver up my wife to her float.  I must get her to the float loading-up of women -- because it's the Krewe of Nyx -- before 1:00.

First of all, I would like you all to introduce yourselves because I don't know all of you.  I've been through all this stuff and I have thought about it.  I'm going to tell you what I would like to do going forward with this issue.  Then I want to give anybody who has anything to say a chance to have their say.  If we don't finish by 11:45 and I'm bolting out of here like a member of the Blue Flame Society, you can go have lunch, and we will reconvene at 1:00 if there's any further things to discuss.

I know Mr. Jarrett, but would everybody else introduce -- go ahead.  Why don't you make your appearances for

1    the record, all of you.

2              **MR. JARRETT:**  Yes, sir.  Keith Jarrett for BP.

3              **THE COURT:**  Why don't y'all come up to these tables

4    where I can better see and hear you.

5              **MR. HODGES:**  Good morning, Your Honor.  Kevin Hodges

6    for BP as well.

7              **THE COURT:**  Mr. Hodges, how are you?

8              **MR. HODGES:**  I'm well.  How are you?

9              **MR. KIRBY:**  Patrick Kirby for the plaintiffs,

10    Your Honor.

11              **THE COURT:**  Mr. Kirby, how are you?

12              **MR. KIRBY:**  I'm fine.  Thank you.

13              **THE COURT:**  What firm are you with, Mr. Kirby?

14              **MR. KIRBY:**  The Nations firm.

15              **THE COURT:**  Is there anybody here from the Downs

16    firm?  Nobody from the Downs firm.  Okay.  Have a seat.

17              I've been through the papers as best I can.  I'm

18    not going to tell you that I have read every single word in

19    every single one, but most of them seem to be identical, or at

20    least there seem to be two versions.

21              We have identified what looked to me to be about

22    36 of these that should be moot based on the plaintiffs'

23    counsel representation and the response that they provided in

24    disclosures.

25              Now, I know with certainty that four of them

are.  Those are *Brown*, 18-9927, and the three that were from the Falcon firm, but I think there's 30 other ones -- we have a list -- that should be moot.  There may be more that should be moot.  I consider these things to be moot if BP has gotten full disclosures.

I have a list.  Maybe during the break, or if we have time before I have to bolt, we can go over my list, and you all can confirm to me whether those are good and ready to be addressed on the venue issue, and I will just dismiss those motions to compel as moot.  If there are more, I need you to tell me what they are.  Maybe we will sit down and go through our lists.  That's the first thing.

The second thing is that I want to emphasize to you the importance of doing these disclosures and doing them fully.  I prefer that you all do, on the plaintiffs' side, what some of you did, which is if you didn't have the information, you at least provided a questionnaire that said, "We will supplement."  Well, it's time to supplement.

What I'm going to do is, on these 148, on those that have requested additional time, I'm going to give it to you, but this is going to be a drop-dead deadline for supplementing disclosures under Rule 26(e)(1)(B).

I understand from some of the submissions by the plaintiffs' counsel that you have -- I don't consider any of this a lawyer problem.  I consider this to be a plaintiff

11:04

1    problem.  You have plaintiffs, apparently, that are hard to

2    contact or they didn't give you good contact information or --

3    I don't know.  That's a plaintiff problem, and they have to get

4    on the stick.  They have to show up.  I'm confident that you

5    guys are doing everything you can to try to contact them.  I

6    don't know why I'm confident, but I just am.  I'm going to give

7    a deadline, and then I'm going to expect you to give full

8    disclosures.

9              Now, I want to stop you all from filing these

10   conditional venue statements.  They are not helpful.  I think

11   you did it just because you don't want to be out of compliance

12   with the order, which I understand, but I want to set up a

13   different system for you all reporting to me who is making

14   disclosures and who hasn't.  That's the first thing.  I want

15   y'all to stop filing those because they don't really help

16   anything.

17             Mr. Kirby, I guess you are the only one in a

18   position to answer this question.  Y'all filed some statements

19   about what venue should be even when there were instances where

20   you didn't have full, complete disclosures.  Was there a basis

21   for the venue selections you all made in that instance?

22        **MR. KIRBY:**  It varied from case to case.  Probably

23   many times, given the limited information that we had

24   available, it was the residence of the plaintiff.  That would

25   be my default.

1    **THE COURT:**  Right.

2    **MR. KIRBY:**  I certainly am not representing to the

3    Court that that covers every one of them, but that would

4    probably be the first place that we would look.

5    **THE COURT:**  Okay.  Well, I want to stop doing that.

6    It's a waste of your time.  As I said, it doesn't really help

7    me get things onto the next stage -- which is all I'm

8    interested in doing, is getting these things onto the next

9    stage -- so they can proceed however the judge who gets them

10   wants to handle them.  I don't want you to file those anymore.

11   This is what I'm thinking about doing.

12             Oh, there's one more thing before I forget.

13   Some of the motions to compel request attorneys' fees and some

14   don't.  I want to know if BP has some kind of consistent

15   position on this.  I'm not inclined to award attorneys' fees

16   when y'all file these motions, especially if you got some kind

17   of response, even if it was deficient.  If you got ignored by

18   the other side, well, that's different.  It seems to me that

19   the ones on which you got ignored were few.  Does BP have some

20   consistent position on attorneys' fees?

21   **MR. HODGES:**  We do, Your Honor.  The reason we moved

22   for costs as to the Downs firm is this is now the eighth motion

23   to compel that we filed against that firm.  Your Honor has

24   granted all of them, at least in part.  Some were mooted by

25   receipt of the disclosures after we filed the motion.

11:08

1      **THE COURT:** Let me say I'm really disappointed that
2  they are not here. "Disappointed" is trying to be polite. I
3  don't know why. It's not my natural tendency. Thank you for
4  being here, Mr. Kirby.

5      **MR. KIRBY:** Thank you, Your Honor.

6      **THE COURT:** The Falcon firm, they resolved this with
7  you all. We got a call this morning.

8      **MR. HODGES:** They did.

9      **THE COURT:** Since it was resolved, I said no need to
10  appear. I would like to have at least that courtesy, to
11  whatever extent that anybody ever talks to anybody at the Downs
12  firm. I guess there is such a thing as the Downs firm.

13      Anybody here from the Downs firm? Very
14  disappointed. Imagine my disappointment.

15      I'm sorry.

16      **MR. HODGES:** No, to finish my answer to your
17  question, Your Honor, this eighth motion to compel that we
18  filed, there were 12 lawsuits involved in it. In four of them,
19  we got no disclosures whatsoever. In eight of them, we got
20  disclosures that were not signed under penalty of perjury as
21  required. We received no signed authorizations for the release
22  of medical, Social Security, or claims administrator records.
23  Since we filed our motion, we have had no contact from the
24  Downs firm about these disclosures, and they have not been
25  cured.

11:09

1    **THE COURT:**  So, your position, I guess, from what you

2  just said, is in the motions in which you affirmatively

3  requested attorneys' fees, you continue to make that request?

4    **MR. HODGES:**  We do, Your Honor.

5    **THE COURT:**  The reason you didn't request them in the

6  other ones was at least you were getting some contact and

7  attention from the other side.

8    **MR. HODGES:**  In addition to the fact that this is the

9  first motion to compel that we have litigated with the Nations

10 firm.  With Downs, quite frankly, we didn't know what else to

11 do.

12   **THE COURT:**  I made a bunch of charts to try to figure

13 this out, but is it fair to say that the ones in which you have

14 asked for attorneys' fees are all against the Downs firm?

15   **MR. HODGES:**  That's correct.

16   **THE COURT:**  Thank you.  I understand now.

17       So this is kind of a new supplemental case

18 management order for this issue that I'm thinking about putting

19 into place.  You are going to be excused from filing

20 conditional statements, both sides.  There's no need to do

21 that.  Instead what I would like to do is on a day that we

22 pick -- whether it's monthly, every six weeks, you all tell me

23 what's reasonable -- I would like the BP lawyers to send me one

24 status report.  You can put on the usual caption, refers to

25 BELO cases.  Then under where it refers to those three BELO

cases on the caption, just list the numbers of the cases you are talking about.  You all are going to tell me what's a good schedule for the filing of these reports.

I want the report to say two things, although I think the first report might just be saying one.  I just want a list of the cases in two categories:  (1) in which you have received nothing; (2) in which you have received deficient responses, that maybe respond to only some of the questions, the other ones say will supplement, or they are not signed, or whatever the deficiencies are.

As far as I can see, I don't have anything on these 148 motions where there's a response to something and it's a substantive response, and you all contest the sufficiency of the response.  If the questionnaire says, "Have you ever been married before?" and the response is "Yes, once," I don't have a motion that says, "Wait a minute.  We hear he has been married twice."  I don't have anything like that.  So I think this is just a situation where the plaintiffs, they are out of touch.  I feel sorry for you, in some respect.

So I want two categories:  (1) "We have nothing"; (2) "These are deficient."

If you want to put a parenthetical in of why they are deficient -- I understand what you are talking about now, having read this -- just a list.

Then a second category -- because I'm going to

11:13

1  issue orders today.  Any case where they have asked for more

2  time in their responses, which there's a bunch of them, I'm

3  going to give you more time.  I'm thinking about 30 days, and I

4  will set a particular deadline.

5  Is another 30 days after that sufficient if you

6  get the responses to do the venue stipulations?

7  **MR. HODGES:**  Thirty days is sufficient, yes.

8  **THE COURT:**  Okay.  It will be 30 and then 30.

9  So the second category of the one report is you

10  issued orders that they produce the disclosures by this date:

11  (1) "We didn't get them"; or (2) "They are still deficient."

12  Just prepare one.  We will file it in each case.

13  For the ones who don't respond in response to this order, they

14  are going to be put on a show cause docket in front of

15  Judge Barbier on dates that Judge Barbier will give me.  The

16  plaintiffs are going to be ordered to appear in person, not

17  just their lawyers, to explain why they have not complied with

18  the Court's orders.

19  Judge Barbier is going to determine whether they

20  have shown cause to give them more time or whether they should

21  simply be dismissed for failure to prosecute or as a sanction

22  for failure to make required disclosures.  That's going to be a

23  third chance.

24  If I get this report on the 1st of May that

25  says, "The following plaintiffs, despite the Court's order to

disclose, have not made disclosures," they are going to go on this show cause docket before Judge Barbier. That hearing will obviously be set off into the future some weeks, I guess, depending on what Judge Barbier's calendar says.

Then the plaintiffs will have one last chance during that interim to give up these disclosures. My suspicion is if you report that they have provided the disclosures, Judge Barbier will take them off the show cause docket, and you will have a new deadline for the venue stipulation.

Mr. Kirby, I know you are in a tough spot with people that didn't leave you good contact information, but that's not on you; that's on them. It will be up to Judge Barbier whether to give them more time or just to dismiss their cases.

**MR. KIRBY:** Okay.

**THE COURT:** That's my general outline. Now I want to give each of you a chance to say whatever you would like to say.

**MR. JARRETT:** Good morning, Your Honor. Keith Jarrett. Is this going to be an evergreen process, Your Honor? In other words, because --

**THE COURT:** No, it's not.

**MR. JARRETT:** More specifically, are you going to look for status reports at periodic intervals of time?

**THE COURT:** Yes, it will be at periodic intervals of

11:16

1    time, but the only report is going to be -- see, when you say

2    "evergreen" --

3           **MR. JARRETT:**  I misspoke.  I thought, for example,

4    you might be saying, "BP, on the 1st of every month, can you

5    give us a status report on all the cases and where they stand."

6           **THE COURT:**  No.  I just want the cases in which you

7    haven't gotten the disclosures or you got what you got already.

8    I don't want a report on all 2,000 cases.

9           Look, this is working fine in the situations

10   where you get the disclosures.  I've only had a smattering of

11   disputed venue -- which I'm happy to get those motions.  If

12   y'all disagree on what the venue should be, then file your

13   motions.  I only have gotten a few of those because y'all are

14   working fine when it works.  When the disclosures come, more

15   often than not I get a stipulation as to what the proper venue

16   is.  That's wonderful because then off the case can go and it

17   can proceed.

18          I don't know what's going to happen in the other

19   districts, but I know what's going to happen in this district.

20   All kinds of things, right?  I already did this once before in

21   the *Katrina* cases, and all kinds of things happened.  The

22   important thing is get them to where they are going so they can

23   get going, so these people can either get relief or they can

24   get dismissed, whatever is appropriate.

25          I don't want a big, giant report from BP.  I

11:18

1  just want a simple list:

2         (1)  "These people did not provide the

3  disclosures by the deadline.  Here is a list of people that

4  gave us nothing.  We got zip."

5         (2)  "Here's the people that gave us something,

6  but they are deficient.  For example," and then just put a

7  parenthetical, "e.g., will supplement," "no signature," "no

8  answer."

9         (3)  Then the second portion of the same report,

10  "You ordered these people to give the disclosures by this date.

11  They did not do so."

12         Then things are going to automatically happen.

13  For the ones on the first part, I'm going to set a deadline.

14  I'm just going to issue an order setting a drop-dead deadline

15  for them to make those disclosures.  For the second group, that

16  didn't comply with an order, they are going on a show cause

17  docket in front of Judge Barbier.

18         You won't have to file any motions.  You won't

19  have to file any conditional statements.  The Court is going to

20  automatically do those things.

21         So I don't know if I answered your question, but

22  I'm not looking for a big, giant status report.  I don't want a

23  big report, "We tried to talk to the Downs firm, and they won't

24  return our phone calls" or "We exchanged these emails."  I

25  don't want copies of your emails.

11:19

1          **MR. JARRETT:**  Judge, you were very clear.  I

2   understood that.  I think we have an excellent understanding of

3   what you are looking for.  I didn't ask the question right.

4   What I meant to be asking was -- there are 25 or 30 cases that

5   are hitting their deadlines every day.

6          **THE COURT:**  Yes.

7          **MR. JARRETT:**  Some of them are compliant; some of

8   them are not.

9          **THE COURT:**  Yes.

10          **MR. JARRETT:**  Our status report will be a snapshot in

11   time.

12          **THE COURT:**  Yes, I understand that.  Yes.  I don't

13   want the status report every day.

14          **MR. JARRETT:**  No, I thought maybe you might be

15   saying, "On the 1st of every month, give me another status

16   report on where the docket is," just as you're describing.

17          **THE COURT:**  No.  No.  I want y'all to propose to me,

18   you three, some schedule upon which these dates might be

19   submitted.  Every day more come in.  So cumulate them, and then

20   pick a day.  I don't care what day you pick.  Pick an interim

21   of time.  I don't care what interim of time you pick.  I don't

22   want it to be every day.  It seems to me maybe once a month

23   would be okay, something like that.

24          **MR. JARRETT:**  Yes, sir.  Understood, Your Honor.

25          **THE COURT:**  If y'all think something more frequent is

11:21

1 necessary or something less frequent than a month -- this is

2 what we are trying to do. We are trying to give the plaintiffs

3 who did not give you adequate contact information and who are

4 not doing what I think prudent and responsible litigants -- I'm

5 not talking about lawyers -- ought to do, which is pay some

6 attention to your lawsuit, I'm trying to give those people

7 every opportunity to snap out of it and contact their lawyer

8 and say, "Hey, what's going on?" so that you can say, "Man, I'm

9 glad you called me. Where have you been?"

10            You know, ain't nobody more familiar with

11 failure to prosecute law than me. They are going to get

12 opportunities, and it's going to wind up being multiple

13 opportunities, but it's going to end in front of Judge Barbier.

14            Look, I have not been as involved in the

15 management of this thing as Judge Barbier or my predecessor,

16 Magistrate Judge Shushan. Just look at the record and see how

17 Judge Barbier handles these things in other instances, in other

18 contexts, and I think you will come to the conclusion that this

19 is serious.

20            What else have you got to say?

21            **MR. HODGES:** Just a couple points of clarification,

22 if I may, Your Honor. So we would file this on the MDL docket

23 with the list of cases underneath?

24            **THE COURT:** Yes. Use the same caption that's on the

25 case management order.

11:22

1    **MR. HODGES:**  Thank you, Your Honor.

2    **THE COURT:**  Right here, when it says "Applies To:
3  BELO," put something under it that says "Related To:" and then
4  list the civil actions.

5         Caption it whatever we are going to call this.
6  Who is the most creative person on the team, plaintiffs' or
7  defendants' side?  Whoever that is, come up with something we
8  can call this.  "Monthly Disclosure Report" -- that's not very
9  good.

10        "In compliance with Case Management Order 2," or
11  whatever I'm going to call this:

12        "I.  The plaintiffs in the following cases have
13  failed to provide the disclosures by the deadline."

14        "(A)  These provided nothing," and list the
15  plaintiff's last name and the case number.

16        "(B)  The following provided disclosures that
17  were deficient, e.g., no signature," will supplement, whatever.

18        "II.  The following cases did not provide
19  disclosures by the Court-ordered deadline."  Just list them.

20        For the ones in the first category, an automatic
21  extension is going to be granted.  There will be a new deadline
22  for each of them to do their disclosures.  You don't have to
23  file a motion to continue.  You don't have to file a motion to
24  extend.  You don't have to do anything.  We will do it, but
25  it's a drop-dead deadline, drop-dead in that I'm going to let

11:25

1    Judge Barbier's office know that these didn't comply with the
2    order and recommend that he schedule a show cause hearing,
3    which he is going to do.
4           **MR. HODGES:**  Your Honor, if I may, the Nations firm
5    has filed motions for 30-day extensions, I believe, in all of
6    the cases.
7           **THE COURT:**  Yes.
8           **MR. HODGES:**  The Downs firm has not.
9           **THE COURT:**  Yes.
10          **MR. HODGES:**  Would the 30-day extension apply to both
11   firms?
12          **THE COURT:**  Yes.  The sanctions ruling will be
13   different.
14          **MR. HODGES:**  Thank you.
15          **THE COURT:**  You know the reason for that, right?
16          **MR. HODGES:**  I think so, Your Honor.
17          **THE COURT:**  Well, good.  I will tell you the reason
18   for it since we are on the record.  Those who don't do this are
19   going to get their cases dismissed for failure to prosecute or
20   as a sanction for their failure to make disclosures under
21   Rule 37.
22              The case law is pretty clear.  You have to give
23   these people reasonable chances.  You can't just do it because
24   they miss one chance.  By the time they get to the show cause
25   hearing, how much time will they have been given to do this?

11:26

1    It will vary from case to case, but it's going to be a pretty

2    substantial amount of time, and they would have been given

3    three chances to do it.

4         **MR. HODGES:**  Your Honor, just so that I am clear,

5    just to make sure that we are in compliance with your case

6    management order, if we do list a case on the report that we

7    will be submitting, our deadline to make a venue submission,

8    will that be extended?

9         **THE COURT:**  It's automatically extended.

10         **MR. HODGES:**  Thank you, Your Honor.

11         **THE COURT:**  That's why I'm saying don't bother with

12   the conditional dismissal statements.  You don't have to do

13   that anymore either.  It will be understood that the venue

14   submission is in abeyance until the disclosure issue is

15   addressed.

16         Look, I'm trying to save you all time and money

17   on both sides, but there's some selfishness in this too.  I'm

18   getting a ton of paper every day.  Because I'm a simple caveman

19   who cannot function in the digital world, I require that poor

20   lady right over there to send me the paper because I wind up

21   taking stuff home.  I can't function in the 21st century.

22         It's a good thing that I'm being phased out.

23   You should have seen my dining room table on Sunday at my

24   house.  It was covered with 148 motions divided into categories

25   as my law clerk helped me divide them.  I'm trying to avoid all

11:27

1 of that and also avoid the necessity for you filing all this

2 stuff, preparing it and incurring attorneys' fees and taking

3 the time.

4        **MR. HODGES:**  We appreciate that.

5        **THE COURT:**  That's for both of you, and I'm serious

6 about this.  As far as I'm concerned, looking at this stuff,

7 this ain't your fault; it's your clients'.  They have to take

8 this a little more seriously, the ones who haven't given the

9 disclosures.

10        **MR. KIRBY:**  Yes, Your Honor.  I fully understand

11 that.  I know the Court -- I'm not educating the Court on the

12 various reasons why this particular population is -- many of

13 them go offshore.  They drop out of touch.  Their economic

14 situation renders them such that they go from cell phone to

15 cell phone to cell phone, and their numbers change quite often.

16 We will be in touch with them on a regular basis, getting

17 information, and then all of a sudden radio silence.

18        So I'm not going to just go on a long-winded

19 deal, but it's very, very difficult to track and keep track of

20 our client base.  We have a large staff that's devoted to that.

21 We are staggering shifts for nights and weekends to catch those

22 that are away during the day for work.  We are doing everything

23 we can to try to --

24        **THE COURT:**  There's not a doubt in my mind that the

25 Nations firm is doing everything it can do to deal with this,

not a doubt, and -- we don't know each other -- I am a man of
the people.  I know my people.  I know what they are up to.  I
know what they are doing.  I know what their lives are like.

   The only problem I have with my people is
sometimes they are not responsible enough.  They think that
they turn their case over to a lawyer and it's all on the
lawyer, and it ain't.  Sure, a lawyer has a lot of
responsibility, but this, the provision of basic information --
I mean, you know, come on.

   **MR. KIRBY:**  If I might, Your Honor?

   **THE COURT:**  Yes.

   **MR. KIRBY:**  This process has been going on for quite
some time.  The time grinds people down --

   **THE COURT:**  I know.

   **MR. KIRBY:**  -- and their patience.  In their minds,
they have already provided it.  We catch a lot of frustration,
where they just hang up sometimes.  That goes to Your Honor's
point.

   **THE COURT:**  Okay.  I understand.  Look, frustration
is my middle name.  If we get together more often -- I don't
know why I'm in such a good mood today.  Usually I'm the king
of frustration, so I understand frustration.

   So they are frustrated.  Okay.  Well, welcome to
America.  That doesn't change the fact that they are
responsible.  I do a settlement conference, at least one,

11:30

almost every day.  I hear plaintiffs -- and defendants, too,
the litigants -- express their frustration about the process,
the litigation process, and I say, "Welcome to America."  I
wish I could write them a letter.

       **MR. KIRBY:**  I won't take any more of the Court's
time.

       **THE COURT:**  That's all right.  You take as much time
as you want.  I'm so happy to see you here.

       **MR. KIRBY:**  Well, I haven't heard that in a long
time, Your Honor.

       **THE COURT:**  All right.  Then never mind.  Maybe that
was hyperbole.

       **MR. KIRBY:**  As everyone in this courtroom is aware,
this particular set of cases, it's not your standard someone
was injured and they immediately ran and filed a federal
complaint.  There was a notice of intent to sue.  There's been
a lot of history behind this --

       **THE COURT:**  I know.

       **MR. KIRBY:**  -- that is extensive.  We are coming up
on the ninth anniversary of the disaster --

       **THE COURT:**  I know.

       **MR. KIRBY:**  -- so that compounds their frustration.

       **THE COURT:**  If they were here, what I would tell them
is, "I understand, and all we are trying to do, to some extent,
is we are trying to make it at some point into a regular

11:32

lawsuit," because I know what happens to regular lawsuits in this Court.  I don't know what happens in the Southern District of Mississippi or anyplace else.  In this Court, once these cases are reallotted, they are going to get resolved one way or the other.

If your people were here, that's what I would tell them.  "I know you're frustrated.  I'm sorry that you have had to go through this process, and I'm sorry it has taken so long.  We are trying to end that right now and get you to a place where your claim can be resolved."  That's what I would tell them if they were here.

I'll bet you even if they don't do anything, but they show up in front of Judge Barbier, he will probably give them at least a couple of hours.  "Well, sit down right here and fill out this form with your lawyer."  That will probably be what happens.

**MR. KIRBY:**  Well, Your Honor, what you are saying today is very helpful because, trust me, I'll conduct a meeting.  Our staff will be made aware of everything, the relevant things that transpired today that affect their case, and to impress upon them again if it needs to be -- and apparently it needs to be in some cases -- how important it is to be in compliance and to get this done.

**THE COURT:**  Well, I think it's not your staff.  I think it's the plaintiffs.  Based on the responses you all

11:33

1    did -- I'm talking about the Nations firm -- what you did,
2    doing the same thing BP did, "Here's our best guess at venue,"
3    asking for extensions of time when you couldn't get the
4    information, that's all been prudent and responsive, but it's
5    got to come to an end.
6              When it comes to an end, it won't be because of
7    something you all failed to do, the Nations firm; it will be
8    something that your clients failed to do, which is exactly the
9    standard for dismissal of cases for failure to prosecute.
10   Anything else?
11             **MR. KIRBY:**  Not at this time, Your Honor.
12             **THE COURT:**  If y'all don't mind, I'm going to recess.
13   I'm going to ask my law clerk, Mr. Acosta here, to show you our
14   list of the 30-some-odd cases in which we think the motions are
15   moot, and it seems like from what you have submitted you are
16   ready to have 30 days to do a venue analysis.  I think they are
17   all the Nations firm's cases.
18             **THE LAW CLERK:**  I think they are.
19             **THE COURT:**  I think they are.
20             **MR. JARRETT:**  We have a list, too, Your Honor.
21             **THE COURT:**  How many does it have on it?
22             **MR. HODGES:**  There were 33 in which a filing was
23   made, and then some other ones have been submitted since that
24   time, some of them as recently as yesterday.
25             **THE COURT:**  If y'all don't mind, since I have to

11:35

deliver my wife of 42 years to her float, sit here for a few minutes with Mr. Acosta. Go through your list and ours, and see if we can come up with a list that I can dismiss as moot. As to the others that anybody has requested more time -- well, everybody is going to get more time.

The motions for fees as to the Nations firm are going to be denied. The motions for fees as to the Downs firm are going to be granted. I need to know how much you want and what the basis for that is. I will set up a deadline for which you can submit a short affidavit or something that tells me rates and time spent, things that you need to do to establish some kind of attorneys' fees.

I will be honest with you. If somebody from the Downs firm had showed up here today and made some kind of explanation or participated in some way, we wouldn't be doing this. I don't remember what the order said, but I think it said counsel for the plaintiffs must attend. I think the word "must" might have been used. I will have to go back and take a look at that, make sure we said "must" and not "may."

**THE LAW CLERK:** I'm sure we said "must."

**THE COURT:** I'm sure we said "must."

I think what I might do is draft a proposed CMO setting out what I just said and, if you don't mind, before I issue it, send the draft to you, Mr. Kirby, and you, Mr. Jarrett, and have you all look at it and give me some kind

1    of input on it before I actually issue it.

2             **MR. JARRETT:**  Very good, Your Honor.

3             **THE COURT:**  I'm thinking about the 1st of each month,

4    assuming it's not a holiday, maybe commencing April 1.

5             **MR. HODGES:**  I would suggest, Your Honor, that

6    there's already a backlog because --

7             **THE COURT:**  How much?

8             **MR. HODGES:**  Well, the Nations firm has filed, I

9    believe, 163 new lawsuits since we filed our motion to compel.

10   I think we have identified maybe 100 where we have this issue.

11   So I would suggest we might want to move that deadline up to

12   maybe a week from Friday for the first report.

13            **THE COURT:**  Well, how about this?  Yes, that would be

14   fine.  Why don't y'all talk about that.  How about this?  Go

15   through these lists.  Let me go deliver this woman to her

16   float.  I'll be back for 1:00.  Go through these lists.  Get

17   something to eat.  Maybe come back at 1:00 and just touch base

18   on where we are.

19                 If you have a proposed date for the first

20   report, let's have it.  Then I will draft the CMO in the next

21   day or two, and I'll circulate it to you two for comment.  We

22   can do all this by email.  We will do all this informally.  I

23   will receive your comments.  I will either accept them or

24   reject them, and then I will issue the CMO.  It's going to be

25   very limited to this disclosure issue.  Is that okay?

1    **MR. KIRBY:**  Yes, sir.

2    **MR. JARRETT:**  Of course, Your Honor.  Perfect.

3    **THE COURT:**  Anything else?

4    **MR. KIRBY:**  Your Honor, one thing, and it's not on

5    the docket today, but since Your Honor has expanded the field a

6    little bit.  On the subject of disclosures, the defense

7    disclosures are coming to us from four different law firms and

8    in formats that are very difficult for our firm to handle.

9    **THE COURT:**  You mean computer formats?

10   **MR. KIRBY:**  Yes, the TIFF files that have to be

11   manipulated.

12   **THE COURT:**  I didn't bring out my electronically

13   stored information booklet that reminds me what a TIFF file is.

14   **MR. KIRBY:**  I'm in the same boat as Your Honor.  I

15   don't know either, but I do know that they are very difficult

16   to deal with.  I picked one at random and printed it out.  This

17   is for a Miss -- it really was just throw a dart at the

18   dartboard -- Alfreda Nix, and there are roughly 500 pages

19   produced.

20   **THE COURT:**  What's the difficulty?

21   **MR. KIRBY:**  As you can see, it says "nonresponsive"

22   on that first page.  The only pages in here that don't say

23   "nonresponsive" are the six that I have clipped here.

24   **THE COURT:**  What does "nonresponsive" mean in terms

25   of --

11:40

1    **MR. KIRBY:**  I don't know, Your Honor.  What I'm

2  bringing this up for is we are here talking about disclosures,

3  and I hear the Court loud and clear you don't want to be

4  bombarded with paper.  We are working through this issue.  New

5  firms have entered into the fray of dividing this workload and

6  providing these disclosures.  We are gathering information, and

7  we are conferring and trying to work out the problems without

8  having to seek intervention of the Court.

9           BP's files, they appear to be the electronic

10  equivalent of backing up the dump truck to the loading dock

11  with boxes of documents as has been done, I've been told, in

12  some cases in the past before electronic disclosures were

13  there.  Literally, we have some that are over 6,000 pages.

14  That's a huge electronic file, and then there may be 6, 16, 20

15  pages with any substance whatsoever on them.  The rest of them

16  are just blank pages with "nonresponsive" on there.

17         **THE COURT:**  That's what's produced to you --

18         **MR. KIRBY:**  That's what's produced to us.

19         **THE COURT:**  -- a blank page that says

20  "nonresponsive"?

21         **MR. KIRBY:**  That's the disclosure, yes.

22         **THE COURT:**  What does that mean?

23    **MR. HODGES:**  I don't know exactly which disclosure

24  Mr. Kirby is looking at because it's the first I'm hearing of

25  it, but one of the things that we are required to disclose is

1    our database.  I suspect what happened is that came over in

2    electronic format with perhaps other employees' information

3    redacted so as not to violate their confidentiality, with only

4    the portion that related to plaintiff being produced, but I

5    don't know.  I would need to look at this.

6          **MR. KIRBY:**  I certainly am not trying to ambush

7    counsel.  It's just that --

8          **MR. JARRETT:**  Can I give a concrete --

9          **MR. KIRBY:**  This is an issue that is ongoing and we

10   are working to try to resolve between the firms, but it's a

11   serious issue.

12         **THE COURT:**  Well, the only thing that was in front of

13   me today had to do with plaintiffs' disclosures.  I know BP has

14   a disclosure obligation too.  You showed me "nonresponsive."  I

15   didn't know what the heck it meant.

16         **MR. KIRBY:**  I don't either, Your Honor, except the

17   plain meaning of it.

18         **THE COURT:**  If things have been redacted because they

19   have nothing -- I'm looking at what BP is required to

20   disclose:  all information, data, or other tangible materials,

21   if any, about plaintiff in the BP medical encounters database

22   and/or oil spill worker database.

23              Now, if that blank page that only says

24   "nonresponsive" on it is about somebody else other than this

25   plaintiff, well, then, instead of saying "nonresponsive," why

11:43

1    don't you say -- why don't you not even give them that, first

2    of all?  Just give them the information about this plaintiff.

3    Second, instead of saying "nonresponsive," why don't you say

4    "redacted because it deals with someone other than plaintiff"?

5              The main thing I wanted to tell you all is that

6    if this is an electronically stored information technical issue

7    or it's an issue of the plaintiffs receiving disclosures and

8    they don't understand what it means because it has something

9    like "nonresponsive" on it that doesn't mean anything, then sit

10   down and explain it to them, and set up some different system

11   by which you make the disclosures so he knows what he is

12   getting when he gets it.  That's all.  Have that discussion.

13             If it's a technical issue that relates to the

14   way TIFFs or PDFs -- I should have brought my book out here so

15   I could pretend I know what I'm talking about -- well, then,

16   sit down, have a conference, get each of your tech guys there

17   to figure out some better way to produce this electronically.

18        **MR. KIRBY:**  I believe that's where we ended,

19   Your Honor.

20        **THE COURT:**  If they are producing it electronically

21   in a format that you can't --

22        **MR. KIRBY:**  It takes a long time to convert to

23   something usable in our system.

24        **THE COURT:**  Okay.  Then have that discussion with a

25   tech guy sitting at your table.  Have your tech guy say to this

1    tech guy, "This is easier for us to access and organize if,

2    instead of TIFF, you produce it in BIFF," or something.

3         **MR. KIRBY:**  We produce our disclosures in PDF format

4    in a ShareFile system.

5         **THE COURT:**  On electronically stored information

6    issues related to discovery, I want you all to have sitdown

7    conferences where the lawyers explain to each other what the

8    difficulties are -- and tech guys are sitting there, too -- to

9    figure out an ESI resolution to whatever the problem is.

10         **MR. HODGES:**  We are happy to do that, Your Honor.

11         **THE COURT:**  Happiness is hard to find in this

12    building.

13         **MR. HODGES:**  We are using the format from the

14    pretrial order in the MDL, but we are happy to have that

15    conversation.

16         **THE COURT:**  Have that conversation.  If you need a

17    different format, then use a different format if it's doable

18    and it's not overly expensive and all the other things that go

19    into all the ESI considerations that you have to make under

20    Rule 34.

21              You know what else?  Let me make this further

22    suggestion.  If you can't resolve this technical issue, then

23    before you file 157 motions to compel, why don't you ask me for

24    a status conference, and we will talk it out.

25         **MR. KIRBY:**  We will do that.  We have been, on an

1   ad hoc basis, dealing with this through emails and people

2   getting on the phone with someone, whoever transmitted it,

3   saying, "Hey, can you walk me through this," and that kind of

4   thing.  We will get more organized in that effort, in the

5   spirit of cooperation, to get this done.  At the end of the

6   day, we just want the information.

7            Until we can get this in a manageable format --

8   I was just reading a memo my paralegal gave me.  This was just

9   a random of several that came in in one day a couple of days

10  ago.  One had 6,294 single files for one client, and it took

11  several steps, well over an hour, just to get that in usable

12  form, and there is a volume of cases.

13           So then to see whether or not those are

14  responsive and to see the substance of what's in here and how

15  it matches up with the duty to disclose, the information that

16  I'm seeing in the limited ones that I've been able to go

17  through is not very helpful.  By the time we get to expert

18  reports, there's a lot of information about our clients that's

19  been provided to their experts that I think falls under the

20  category of what the Court just read that we are not getting in

21  these disclosures.

22           So those are the issues.  We will work through

23  them.  This wasn't an attempt to ambush.  This has come up and

24  it's in the subject of disclosures.  We will do what Your Honor

25  suggested.

1    **THE COURT:** Since you brought it up, I'm telling you

2  how I want it resolved.

3    **MR. KIRBY:** Got it.

4    **THE COURT:** I want you all to have a discussion, with

5  tech guys present, where you tell them what your technical

6  problems are.

7    If they are disclosures that they are required

8  to make and you're receiving them and you're finding that they

9  are not helpful, then maybe you can agree that they don't have

10  to disclose that kind of stuff, whatever it is.

11    If, on the other hand, you have gotten a

12  disclosure, and you think there's some underlying thing that

13  goes with that disclosure that you have not received, then tell

14  people what you think that is, and then they can tell you if

15  they have it or not.  If they do, then maybe we should add that

16  to the disclosure; if they don't, there's no reason to add it

17  to the disclosure.

18    Look, this sounds to me like a 72 percent

19  technical ESI issue that you need techies involved in and a

20  28 percent sufficiency of disclosure issue.  Address it with

21  each other.  See if you can come to some resolution on

22  technical and substance issues.  If you can't, before you file

23  157 motions to compel, why don't you all just call me together,

24  or file a motion if you think that's easier than to call me.  I

25  wouldn't want to talk to me if I were you.  File a short motion

11:49

1  for a status conference to discuss the following issues -- 1,

2  2, and 3 -- and we will have a status conference.

3          **MR. KIRBY:**  All right.  Hopefully, best case

4  scenario, we don't have to do that; but if we do, we will have

5  narrowed those issues down.

6          **THE COURT:**  Just recognize if you are coming to me

7  with some technical issues, you know, because we need this in

8  OCR format instead of TIFF format, I can't help you.

9          **MR. KIRBY:**  Right.  I'm no help in that regard

10  either, Your Honor.

11          **THE COURT:**  It's float delivery time.  I'll be back

12  at 1:00.  Meanwhile, talk to Mr. Acosta.

13          (Lunch recess.)

14          **THE COURT:**  Let the record reflect -- and as a lesson

15  to young people out there -- that those of you who are

16  interested in staying married for 42 years, float delivery of

17  the wife was effectively and efficiently executed by me.  I

18  remain in Mrs. Wilkinson's good graces.  All is well on the

19  domestic front.

20          **MR. JARRETT:**  Do you have to be there to pick her up,

21  Judge?

22          **THE COURT:**  I do.  Do you want to hear about that

23  plan?  Well, luckily for me, I have this fancy parking spot

24  provided by you, the taxpayers of the United States, in the

25  basement, two blocks from the parade route.  So I'm going home,

01:01

1    I'm taking the dog outside, and then I'm coming back here.

2         I expect the festive and Mystic Krewe of Nyx to

3 be arriving somewhere in the vicinity of the United States

4 Courthouse at about 8:30, weather permitting and no floats

5 hitting trees or anything like that, where I intend to walk out

6 to St. Charles Avenue, stand out there until Float 10,

7 passenger side, third and fourth from the back, pass by, try to

8 get their attention so they can see I'm there, come back to the

9 courthouse, and wait patiently for a text to arrive from my

10 wife and/or daughter announcing where I should pick them up.

11     **MR. JARRETT:**  Your Honor, it will be my co-counsel's

12 first Mardi Gras parade tonight.  Can I coach them on calling

13 Mrs. Wilkinson?

14       **THE COURT:**  Yes.  Sure.

15     **MR. JARRETT:**  "Mrs. Wilkinson, throw me something."

16     **THE COURT:**  You know what you should do, though.

17 Here's what you should do.  Get yourself a sign.  Get yourself

18 a sign and a yardstick or something.  Put on the sign in

19 something that she can see "Throw me something, Judge

20 Wilkinson's wife," and then wave it like this.  Wait for

21 Float 10, passenger side, to come by, and then inch your way up

22 to the front, being careful not to be run over by a float,

23 third and fourth from the back, near the end.  That's my wife

24 and daughter.  "Throw me something, Judge Wilkinson's wife,"

25 and I tell you what.  If this is successful and you get

something -- especially one of those glittery purses they have
been littering my house all these past -- covering my house
with glitter, tell Jarrett --

            Jarrett, you tell Kirby that you are doing this.
Get his consent to an ex parte conference -- or you can get
Kirby on the phone so there's no ex parte contact, and just
tell me that it was a success.

        **MR. JARRETT:**  Will do.

       **THE COURT:**  This would be better.  If around midnight
tonight, when finally I have got these two women in my custody,
if one of them says to me, "Hey, there were these two ladies on
the side of St. Charles Avenue that we didn't even know that
had a big sign that said, "Throw me something, Judge
Wilkinson's wife.  Who were they?" I'm going to say, "Those
were visiting dignitaries from out of town."

            All right.  How are we doing?  Mr. Acosta has
advised me that you are all straight on the 50-some-odd motions
that are to be dismissed as moot.  Correct?

       **MR. KIRBY:**  Correct.

       **MR. HODGES:**  We are.

       **THE COURT:**  My intention is to grant all the other
motions, the ones concerning the clients of the Nations firm.
I'll set a date certain about 30 days hence, which would be
April 1 or so, for the disclosures to be made.  There will be
no award of attorneys' fees on those motions.

01:04

1       For the other motions that will be granted, same
2   deadline, with an award of attorneys' fees to be set
3   subsequently.  I will put some schedule in place for you to
4   submit your proof of what the amount is.  Then there will be a
5   third order dismissing the 50-some-odd as moot.
6       Now, on the case management order, have y'all
7   had a chance to think about that, particularly in terms of when
8   the first report might be delivered?
9       **MR. HODGES:**  Yes.  What we thought, Your Honor, is
10  that the first report we would deliver to you a week from
11  Friday, which is March 8.
12      **THE COURT:**  Okay.  Let me let you in on a little
13  secret.  Unlike Mrs. Wilkinson, I do not like Mardi Gras, and I
14  do not participate.  As a tradeoff for spending thousands of
15  dollars for her to throw stuff into the street while wearing a
16  green wig, I get to leave town for Mardi Gras and go to the
17  beach.  I think this beach is located in the Northern District
18  of Florida.  Are we transferring cases there?  Yes, we are.
19  Northern District of Florida.  I won't be here on March 8, so
20  let's make it March 11.  How about that?
21      **MR. HODGES:**  That sounds fine.  Then what we proposed
22  was just to get on a regular schedule after that and make
23  subsequent reports due the 1st of the month.
24      **THE COURT:**  Okay.  So the next one will be April 1?
25      **MR. HODGES:**  Correct.

 1    **THE COURT:**  How does that sounds to you, Mr. Kirby?

 2    **MR. KIRBY:**  That's fine.  That's agreeable,

 3  Your Honor.

 4    **THE COURT:**  So the first report won't have any on it

 5  that are in violation of an order.  There's no order in place.

 6    **MR. HODGES:**  It won't have any that were the subject

 7  of these motions that we are here for today, but we have had

 8  new ones come in since the motion was filed.

 9    **THE COURT:**  Right.  What I'm saying is there will

10  just be one category.  These people have not provided

11  disclosures or provided deficient disclosures by their

12  previously set deadline.

13    **MR. HODGES:**  Correct.

14    **THE COURT:**  On April 1, there still won't be any in

15  the second category.  On May 1, there may be some in the second

16  category, people that have not complied with the order.  Okay.

17    **MR. HODGES:**  That's right.

18    **THE COURT:**  So the first show cause hearing probably

19  would -- I have to talk to Judge Barbier when he might have the

20  first one, but it probably wouldn't be before late May,

21  certainly.  Okay.

22    **MR. HODGES:**  Then, Your Honor, just for housekeeping,

23  for those that are being dismissed as moot today, I would

24  propose that our venue motions be due 30 days from today.

25    **THE COURT:**  That's fine.  We will pick a date

01:07

1  certain.  I think because of the weekends, the way it falls, it
2  will be April 1.  Thirty days from today would be March 29.  We
3  will make it March 29 for the venue stipulations.
4                   Okay.  Is there anything else that we can
5  address?
6           **MR. KIRBY:**  I don't have anything, Your Honor.
7           **THE COURT:**  I'm certain I must have your email
8  addresses somewhere, on the docket sheet or something.
9           **MR. JARRETT:**  With the Court's permission, I will
10  provide one with an email to your Court with everybody
11  combined --
12          **THE COURT:**  Oh, great.
13          **MR. JARRETT:**  -- including Mr. Kirby.
14          **THE COURT:**  Okay.  Great.  All right.  I'll try to
15  email you a draft.  You know, with all these glittery purses
16  being thrown tonight, it might not be until tomorrow, maybe
17  even Friday morning.  Then you all look at it, and as quickly
18  as you can email me back -- even though I'm hitting the road, I
19  still get my emails, so email me back your comments.  I may put
20  this email exchange in the record so that there's no secrets.
21          **MR. JARRETT:**  Understood, Your Honor.
22          **THE COURT:**  Then after I consider your comments, I
23  will be issuing --
24          **MR. JARRETT:**  Your Honor, should I include Mr. Downs'
25  email in that email exchange?

01:09

1       **THE COURT:**  Yeah, I guess.

2       **MR. JARRETT:**  Yes, sir.

3       **THE COURT:**  Why don't you include Falcon too.

4       **MR. JARRETT:**  Yes, sir.

5       **THE COURT:**  Is there anybody else with any number of

6   these cases that you can think of?

7       **MR. JARRETT:**  I think the Amaro firm.

8       **THE COURT:**  Amaro, that's right.  I forgot about

9   Amaro.

10      **MR. JARRETT:**  I think those are the main four.

11      **THE COURT:**  Why don't you include them too.

12      **MR. JARRETT:**  Frank D'Amico, too, Your Honor.  Yes,

13  sir, I will include all of them.

14      **THE COURT:**  Anything else?  Thank you very much for

15  your input.  I appreciate it.

16      **MR. KIRBY:**  Thank you, Your Honor.

17      **MR. JARRETT:**  Thank you, Judge.

18      **THE COURT:**  Let me try to make this clear.  I wasn't

19  expecting any of this to occur.  I figured it would go as

20  smoothly as most of them are, in fact, going.  I'm thinking

21  that if there's some logistical problem with execution of the

22  new CMO, much like I suggested with the ESI problems that

23  Mr. Kirby was talking about, maybe the way to proceed, in the

24  interest of efficiency and saving people time and money, is for

25  you all to call me together or something and say, "We need a

01:10

1   status conference on this issue" or file a short motion, "We

2   need a status conference on this issue," and we will have a

3   conference to try to talk these things out.

4           **MR. JARRETT:**  Understood.

5           **THE COURT:**  There's nothing wrong with anything that

6   was done in this process.  That's what I would have hoped that

7   you would do anyway.  I can see that it must have cost a lot.

8   It took a lot of time to do all of this.  I'm trying to

9   eliminate as much of that as possible.  I don't want to make

10  y'all spend more money than you have to.

11          **MR. JARRETT:**  I think it's an elegant solution,

12  Judge.

13          **THE COURT:**  "Elegant"?  Do you know how rarely that's

14  been said about somebody that grew up in Terrytown?

15          **MR. JARRETT:**  I'm from Alabama, Judge.

16          **THE COURT:**  Where?

17          **MR. JARRETT:**  Montgomery.

18          **THE COURT:**  Oh, that's elegant.  They have a

19  Shakespeare festival there.  In Gretna, we have the Gretna

20  Heritage Festival, where the lead acts are Blue Oyster Cult and

21  Edgar Winter.  There ain't no Shakespeare at the Gretna

22  Heritage Festival.

23          **MR. JARRETT:**  It's very popular, though.

24          **THE COURT:**  Popularity is not my measure of

25  excellence.

01:11

1          **MR. KIRBY:**  Or elegance.

2          **THE COURT:**  Or elegance.

3               Anything else?  I think we are all trying to

4     accomplish the same thing, which is to get these cases to

5     resolution.  I think that's the way to go.  Thank you.  Court

6     is in recess.

7               (Proceedings adjourned.)

8                              * * *

9                         <u>**CERTIFICATE**</u>

10              I, Toni Doyle Tusa, CCR, FCRR, Official Court

11    Reporter for the United States District Court, Eastern District

12    of Louisiana, certify that the foregoing is a true and correct

13    transcript, to the best of my ability and understanding, from

14    the record of proceedings in the above-entitled matter.

15

16

17                         <u>*/s/ Toni Doyle Tusa*</u>
                           Toni Doyle Tusa, CCR, FCRR
18                         Official Court Reporter

19

20

21

22

23

24

25